1 | JOHN L. BURRIS (SBN #69888)
LAW OFFICES OF JOHN L. BURRIS
2 | 7677 Oakport Street, Suite 1120
Oakland, California 94621
3 | (510) 839-5200; FAX (510) 839-3882
Email: john.burris@johnburrislaw.com
4 | Doc No. 720746

5 | JAMES B. CHANIN (SBN# 76043)
JULIE M. HOUK (SBN# 114968)
6 | Law Offices of James B. Chanin
3050 Shattuck Avenue
7 | Berkeley, California 94705
(510) 848-4752; FAX: (510) 848-5819
8 | Email: jbcofc@aol.com
Attorneys for Plaintiffs
9 | REGINALD OLIVER, et al.

10 | JOHN A. RUSSO, (SBN#129729)
RANDOLPH W. HALL (SBN#80142)
11 | Office of Oakland City Attorney
1 Frank H. Ogawa Plaza, Suite 600
12 | Oakland, Ca. 94612
(510) 238-3701; FAX: (510) 238-6500
13 | Email: rwhall@oaklandcityattorney.org

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD OLIVER, et al.,<br><br>    Plaintiffs,<br>vs.<br><br>CITY OF OAKLAND, et al.,<br><br>    Defendants. | MASTER CASE NO: C00-4599 TEH<br>OLIVER CASE NO:   C08-04914 TEH (JL)<br>JACKSON CASE NO: C08-4984 TEH (JL)<br><br>**JOINT FURTHER CASE MANAGEMENT<br>      CONFERENCE STATEMENT**<br><br>**Conf. Date: 11/29/2010**<br>**Time: 1:30 p.m.**<br>**Courtroom No. 12, 19th Floor**<br>**The Hon. Thelton E. Henderson** |

JOINT FURTHER CASE MANAGEMENT CONFERENCE STATEMENT
OLIVER V. CITY OF OAKLAND, CASE NO. C08-04914 THE (JL)

1

**JOINT CASE MANAGEMENT STATEMENT**

Pursuant to this Court's Civil Local Rule 16.9, the parties jointly submit this Further Case Management Statement to update the information previously provided to the Court at the time of the previous Case Management Conference:

**<u>Summary</u> of <u>Plaintiff's Current Position:</u>**

The parties have settled the monetary relief claims of the Oliver, et al. Putative Class Member Plaintiffs who were identified in the Stipulated Motion for Approval of the Settlement. All of the aforementioned plaintiffs have been paid and have signed releases. Additional putative class members came forward during the settlement process. All of those plaintiffs have been paid as well and they also have signed releases.

Plaintiffs' counsel are currently holding a portion of the settlement in their trust account in the event that further individuals come forward and are identified as appropriate class members. No such individuals have come forward in the past thirty days. If no further plaintiffs are identified, there will be a further distribution of settlement funds and attorneys' fees in early 2011.

Plaintiffs' counsel specifically retained the right to demand more funds from the City if a significant number of plaintiffs came forward or if there was a very serious case that had not previously been identified. Obviously, these new cases would have to be within the statute of limitations. The statute of limitations is running since the damages' cases of the absent putative class members were dismissed without prejudice on August 10, 2010 as part of the Court's order approving the stipulated settlement. However, thus far, plaintiffs 'counsel have been able to pay

the newly discovered putative plaintiffs with existing settlement funds. This action on plaintiffs' counsel's part should not be construed as a waiver of their right to seek funds should additional plaintiffs come forward.

The injunctive relief portion of the case has not settled. Plaintiffs had a meeting with the representative of the Oakland Police Department and the City Attorney's Office. The OPD representative stated, for the first time, that the Informant Policy and issues related to informants would not be covered in any injunctive relief settlement. This statement was made despite the fact that the informant issue was a major part of the Plaintiffs' case and numerous documents pertaining to this issue were disclosed by Defense Counsel in 2008 and 2009. This included an informant's taped statement, the OPD's Informant policy (DGO-04) and numerous Internal Affairs Documents pertaining to informants. In those documents, an informant admitted that she did not even recognize some of the locations where Officer Rush claimed the informant made controlled buys. Worse, the informant admitted that subject of the warrant obtained for the home of three putative class members did not reside there and that the informant did not make a controlled buy from that individual at the front door to the residence as claimed by Officer Rush in her sworn warrant affidavit.

This was only one example of the woefully deficient informant policy and practice of the OPD that contributed to the violation of the plaintiffs' Fourth Amendment rights in this case. In another putative class member's case, Judge Riordan of the Alameda County Superior Court dismissed her criminal case when he interviewed Officer Loud *in camera* and determined that his claims about the informant he used were not credible. Notably, in that case, Officer Loud told Internal Affairs that he did not document the name or address of the informant. This raises a question as to whether the informant ever existed.

JOINT FURTHER CASE MANAGEMENT CONFERENCE STATEMENT
OLIVER V. CITY OF OAKLAND, CASE NO. C08-04914 THE (JL)

3

Alameda County Superior Court Judge Sarkisian also dismissed the criminal charges against putative class member, Edward Chrisen, because he determined Officer Leal had not been truthful in his account of the background of the informant he allegedly used in that case. On February 23, 2009, Sergeant Joseph Carranza of the OPD Office of Inspector General, did an audit of the Department's informant policy which is attached hereto as Exhibit A.  The OPD was found woefully out of compliance with its own policy by its own members. Plaintiffs' counsel has seen no evidence that any of these deficiencies have been remedied since that time.

Accordingly, Plaintiffs' counsel propounded  written discovery and scheduled a series of depositions which will commence in early December.  Recently, there have been some signs that a settlement can be reached on the outstanding injunctive relief matters.  Defendants have promulgated a new Training Bulleting I-F and shared it with plaintiffs' counsel   There have been productive talks issues relating to policies contained in that document. There are also signs that Defendants may be reconsidering their position that they will not discuss the injunctive relief issues relating to informants and compliance the DGO-O4 policy.  Plaintiffs will update the court on these issues at the time of the Case Management Conference.

**Summary of Defendants' Current Position:**

The current status is that the parties are actively and constructively discussing settlement of the injunctive relief portion of this lawsuit. All damages and attorney fees arising from the damages allegations were settled on or about June 11, 2010. Defendants have satisfied all obligations for payment of damages and attorney fees claims arising out of the damages allegations. The parties are making good faith efforts to settle the injunctive relief claims.

At the September 16, 2010 Further Case Management Conference, counsel for City represented to the Court that on or before November 17, 2010 it would implement a policy and procedure that would prevent a recurrence of the conduct that gave rise to the acts complained of in this lawsuit. Pursuant to that representation, counsel for City and plaintiffs' counsel met and discussed the parties' respective positions on how on or about September 21, 2010. Counsel for City advised plaintiffs' counsel that City would incorporate suggestions offered by plaintiffs' counsel that was practical.

On November 17, 2010 defendant City transmitted to plaintiffs' counsel City of Oakland Training Bulletin I-F; Obtaining a Search Warrant ("TB I-F"). TB I-F is official City policy and must be complied with by all City employees seeking to obtain search warrants. TB I-F establishes mandatory procedures that all City employees must comply with when seeking to obtain a search warrant. TB I-F requires City employees to state detailed information which the employee seeking the search warrant must know to be true and accurate.  City's position is that TB I-F implements a procedure that will completely cure the inadequacies that allowed the acts alleged in this lawsuit to occur.

Defendants believe that the revised search warrant policy (TB I-F) corrects all complained of acts giving rise to this lawsuit. Defendants do not agree that the City's Confidential Informant Policy is causally connected to the allegations of this lawsuit and plaintiffs' counsel has stated that the City Confidential Informant Policy is acceptable. The issue is whether the City has implemented the policy in a manner that will be effective and whether plaintiffs' counsel will receive documents by which they can assess the effectiveness of the Policy during the two years that this Court retains jurisdiction. Defendants' position is that the

Policy is implemented and plaintiffs will be given access to documents that will enable them to assess the Policy's effectiveness, including the extent to which the City complies with the Policy.

**C. Proceedings to Date**

The Complaint was filed on October 28, 2008.  On November 4, 2008, the Court related this case to the Riders' Litigation.

The parties stipulated to the filing of a First Amended Complaint in which additional named putative class members were added to the lawsuit.  The First Amended Complaint was filed on November 10, 2008. The parties also stipulated to the filing of a Second Amended Complaint which added more putative class members as plaintiffs in the litigation.  The Second Amended Complaint was filed on February 19, 2009.

An initial Case Management Conference was held on March 2, 2009.  At that time, the parties had agreed in principal upon an informal discovery process in the hope that the parties could exchange necessary information without incurring substantial attorneys' fees and costs in formal discovery processes.

A Further Case Management Conference was held on June 22, 2009.  At that time, the Court ordered the case to Settlement Conference. Settlement conferences were held on September 17, 2009 and March 1, 2010. The March 1, 2010 settlement conference led to an agreement to mediate the matter before the Honorable Raul Ramirez, Ret. Mediation was held on June 9, 10 and 11. The parties reached settlement of the damages and attorney fees arising out of the damages allegations.  As set forth above, defendants have satisfied all obligations of the damages settlement.

**D. Discovery**

Plaintiffs have propounded discovery request on the issues relating to injunctive relief in order not to prejudice their ability prepare this matter for trial if settlement is not reached. Defendants have not responded to plaintiffs' discovery and do not believe that any discovery is necessary in this matter. Defendants contend that they have revised their policy for obtaining search warrants, have incorporated, as appropriate, plaintiffs' recommendations and have provided the policy to plaintiffs. Defendants believe that the revised policy corrects all deficiencies that allowed the acts alleged in this lawsuit to occur.

Defendants are willing to explore plaintiffs' very positive suggestion that the parties reduce their areas of agreement to a settlement that will resolve this litigation. The parties wish the court to retain jurisdiction over this lawsuit for two years from the date settlement is executed so that either party can invoke the assistance of this court if issues arise that the parties are unable to resolve without court intervention.

**E. Future Proceedings**

Trial is scheduled for April 19, 2011. Defendants believe that they have fully corrected the deficiencies that allowed the complained of conduct to occur and that a settlement agreement, enforceable by this court during the two years that the court retains jurisdiction, can be reduced to writing by December 7, 2010.   Plaintiffs do not have evidence to believe that Defendants have fully corrected the deficiencies, but will continue to attempt to negotiate a settlement of the injunctive relief claims in good faith.

JOINT FURTHER CASE MANAGEMENT CONFERENCE STATEMENT
OLIVER V. CITY OF OAKLAND, CASE NO. C08-04914 THE (JL)

7

1  Dated: November 22, 2010            _____/S/_____
                                        JOHN L. BURRIS
2                                       Attorney for Oliver Case Plaintiffs

3  Dated: November 22, 2010            _____/S/_____
                                        JAMES B. CHANIN
4                                       Attorney for Oliver Case Plaintiffs

5  Dated: November 22, 2010

6                                        _____/S/_____
                                        Randolph W. Hall
7                                       OAKLAND CITY ATTORNEY'S OFFICE
                                        Attorney for Defendant
8                                       City of Oakland

JOINT FURTHER CASE MANAGEMENT CONFERENCE STATEMENT
OLIVER V. CITY OF OAKLAND, CASE NO. C08-04914 THE (JL)

8

## OAKLAND POLICE DEPARTMENT

### Memorandum

To: Office of the Chief of Police

Attn: Chief Howard A. Jordan

From: Office of Inspector General

Date: February 23, 2009

Subject: Performance Review of Departmental General Order O-4

---

Departmental General Order (DGO) O-4 was published on December 21, 2007 and set forth policy and procedures for the control and management of informants; informant regulations; establishing cooperation agreements; maintaining informant records and files; using informants to conduct controlled buys; and payments made to informants.

The Office of Inspector General (OIG) is required by DGO O-4 Section VIII to conduct annual performance audits of active/inactive Informant Files. On January 9, 2009, the Audit and Inspections Unit of the OIG initiated the first annual review of DGO O-4 to determine if the Department is complying with the policy.

The OIG reviewed Intelligence Division Informant Files and interviewed the responsible Intelligence Division sergeant. The OIG also surveyed all command staff to determine which units were separately maintaining Informant Files. The survey identified five lieutenants in the Bureau of Field Operations whose subordinates were maintaining Informant files, the Homicide Section and the Property Crime / Theft Section. A selective sample of lieutenants and sergeants were interviewed and 60 Informant Files were reviewed.

This review found the Department is not fully complying with the policy.

EXHIBIT A

**Intelligence Division**

The Intelligence Division, at the time of the review, was maintaining 28 Informant files with a backlog of 26 yet to be filed. All files were reviewed.

- The review of the 28 filed Informant Files found that each file had an Intelligence Division number and a checklist to ensure all required forms were completed and included in the file.

- The review found that the required forms were included in most of the 28 files, some files did not have one or more forms.

- Informant Records form, 22 to of 28

- Informant Regulations form, 25 of 28 contained a form signed by the informant

- Agreement Regarding Cooperation form, 23 of 28 contained a form signed by the informant

- Informant Chronological Activity Log (ICAL), 24 of 28 files contained a ICAL

- Five of the 28 filed Informant Files had documentation that supervisor approval was obtained by the officer for the use of the informant.

- History checks, 27 of the 28 files contained CORPUS/CRIMS printouts

- DMV checks, 22 of 28 contained DMV printouts

- Informant's photograph, 27 of 28 contained a photograph of the informant

- All the informants were known to CRIMS and positively identified, informant handlers were not required to obtain fingerprints from the informant, and therefore no file contained a finger print card.

- The informants' information was not routinely being entered into WSIN or BAYIN, as required by policy.

- There was a backlog of 26 Informant Files and no documentation of who accepted the file or the date it was accepted.

- The review of the 26 un-filed Informant Files found each file did not have an Intelligence Division number.

- The review found the required forms were included in most of the 26 files, some files did not have one or more forms.

- The 26 files all had CORPUS/CRIMS and DMV printouts dated in October and November 2008, however there was no documentation as to who conducted the checks.

- None of the 26 un-filed Informant Files had documentation that supervisor approval was obtained by the officer for the use of the informant.

- The Intelligence log did not clearly document the date the file was received from the handling officer or his supervisor. The form merely had a "Date" column. Ideally, it should have three columns: "Date File Created," "Date File Approved by Supervisor," and "Date File Received."

- The informant log indicated two files were deleted (file OPD 0016 and 0017) with no explanation as to why.

**Criminal Investigation Division**

- None of the Homicide Section files had an Intelligence file number. Five of the six files had a number assigned by the Homicide Section, with no explanation of the numbering system. The Homicide Section did not maintain a master file list.

*General Issues of Concern*

The review identified additional areas of concern.

- The policy is not consistent in several areas. For example, in Part III Section E. 2, there are nine items listed that must be included in an informant file. In Part V Section D. 5, there are nine items listed to be included in an informant file, but they are not the same nine items as listed in Part III.E.2.

- Based on responses from the survey sent to all commanders, it appeared that most commanders were not aware if their subordinates were using confidential informants. In addition, there was no evidence to suggest any commander conducted a semi annual review of Informant Files as required by Part VIII. A of the DGO.

- The review showed that individual commanders and supervisors have not set up any system to maintain the handling member's Informant Files for a period of 10 years as required by Part V A. of the DGO.

- There was no consistent process for the handling of Informant Files once a file had been created.

- There was no documentation in any of the Informant Files the handling officer and/or his supervisor or commander conferred with the Intelligence Division sergeant as required by the DGO section III C.

- The documentation of supervisor approval in the files reviewed was poor.

- The overall documentation in the Informant Records Forms and Chronological Activity logs was lacking in sufficient detail and/or information.

- The Chronological Activity Logs did not document when an investigation was completed.

- There was no documentation the files were being turned into the Intelligence Division within 10 calendar days of completion of the investigation.

**RECOMMENDATIONS**

- Since the policy has been in place for a year, the subject matter experts should now evaluate the policy and make appropriate revisions.

- Eliminate the requirement that the handling member's chain of command maintains a copy of the file for 10 years. Due to the constant change in staff, this requirement is too difficult to maintain. Informant Files should be managed similar to Internal Affairs investigation files, with a control file maintained in the Intelligence Division and a working file kept by the handling member. The working file should be returned to the Intelligence Division after each investigation.

- Create a file numbering system similar to the Records Division for Informant Files. [I.e. IIF 08-0001 (Intelligence Informant File year-number)].

- Create an Intelligence Master Log, which provides better documentation of when the file was created, approved, and accepted by the Intelligence Division.

- Create a standard set of forms for confidential Informant Files to be maintained in the Intelligence Division and provided upon request.

- Consolidate the ICAL and Payment record form. The review found some officers used the payment form in place of an ICAL. In cases where no payment was made, a line was simply drawn through the payment box of the Payment record form.

- Require documented approval each time an informant is used for an operation (I.e. control buy, search warrant). The documentation of supervisor approval can consist of an entry in the ICAL.

- Eliminate the quarterly DMV and warrant inquiry and require the handling officer to conduct an inquiry prior to each investigation with the informant and make proper documentation of the action in the ICAL.

## CONCLUSION

Maintaining complete and accurate Informant Files for all confidential informants is critical for managing risk and liability. Properly maintained Informant files are important to the Department's credibility as it relates to controlled buys, arrest warrants, and search warrants. The process for creating and maintaining Informant Files should be stream lined in order to reduce any unnecessary or redundant administrative work. A central repository for a control file should be identified and utilized to ensure the security of the information. Once a file is created, the only significant original document maintained by the handling member, until the conclusion of the investigation, should be the ICAL. Upon completion of the investigation, the original ICAL along with any other pertinent documents should be placed in the control file.


Joseph Carranza
Sergeant of Police
Office of the Inspector General